# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,　　　　　　　:

　　　　　　　　　　　　　　　　　:　　　Case No. 1808018837
v.　　　　　　　　　　　　　　　　:　　　Kent County
　　　　　　　　　　　　　　　　　:
GREGORY L. HIXON,　　　　　　　 :
　　　　　　　　　　　　　　　　　:
　　　　　　Defendant.　　　　　　:


Submitted: April 8, 2019
Decided: May 23, 2019

## ORDER

Defendant's Motion to Suppress (Identification)
*Denied.*


Lindsay A. Taylor, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

Edward C. Gill, Esquire of the Law Office of Edward G. Gill & Associates, Georgetown, Delaware; attorney for the Defendant.


WITHAM, R.J.

Before the Court is Defendant Gregory Hixon's (hereinafter "Defendant") Motion to Suppress evidence seized as the result of a traffic stop and subsequent identification conducted by Delaware State Police.[1] After carefully considering the motion, the State's response in opposition, and record, it appears to the Court that:

1. The Court incorporates its factual findings pursuant to its decisions regarding Defendant's previous Motion to Suppress and Motion for a Bill of Particulars. The Court will further supplement factual findings that were not relevant to Defendant's previous motions.

2. After Defendant exited the Maxima (Defendant's vehicle) parked in the Attorney General's Office parking lot, he locked the Maxima and fled. However, locking the Maxima prevented law enforcement from conducting a probable cause search. After a search warrant was generated and approved, the Maxima was searched and yielded drugs and drug paraphernalia, as well as a Wal-Mart receipt.

3. The Maxima also yielded positive results for fingerprints. The Delaware State Bureau of Investigation (hereinafter "SBI") determined the prints belonged to "Gregory Lawson Hixon."

4. Within three days, Tfc. Solda viewed the SBI photograph of Defendant, and identified him as the Maxima's driver. Tfc. Solda also positively identified Defendant utilizing surveillance footage and photographs provided by Wal-Mart.

5. Defendant was later located, arrested, and charged with twenty-seven drug

---

[1] The Court's order only considers Defendant's suppression motion regarding identification.

*State v. Gregory L. Hixon*
Case No. 1808018837
May 23, 2019

and traffic related offenses.[2]

6. Subsequent to his arrest, Defendant filed an untimely Motion to Suppress evidence based on Tfc. Solda's identification on March 29, 2019.[3] The State provided its response, in opposition, on April 8, 2019. A hearing was held on May 13, 2019 and the Court reserved its decision.[4]

7. In his motion, Defendant moves to suppress all evidence connected to the

---

[2] Defendant was charged with two counts of Drug Dealing, a felony, in violation of 16 *Del. C.* § 4752(1); ten counts of Drug Dealing, a felony, in violation of 16 *Del. C.* § 4753(2); one count of Disregarding a Police Officer's Signal, a felony, in violation of 21 *Del. C.* § 4103; one count of Tampering with Physical Evidence, a felony, in violation of 11 *Del. C.* § 1269; one count of Possession of Marijuana, a misdemeanor, in violation of 16 *Del. C.* § 4764(a); one count of Criminal Impersonation, a misdemeanor, in violation of 11 *Del. C.* § 907; one count of Resisting Arrest, a misdemeanor, in violation of 11 *Del. C.* § 1257(b); one count of Possession of Drug Paraphernalia, a misdemeanor, in violation of 16 *Del. C.* § 4771(a); one count of Reckless Driving, a misdemeanor, in violation of 21 *Del. C.* § 4175; one count of Failure to have Insurance Identification in Possession; a misdemeanor, in violation of 21 *Del. C.* § 2118; one count of Failure to have Registration Card in Possession, a violation of 21 *Del. C.* § 2108; one count of No Turn Signal utilization, a violation of 21 *Del. C.* § 4155; one count of Improper Lane Change, a violation of 21 *Del. C.* § 4122; one count of Passing on the Right, a violation of 21 *Del. C.* § 4117; one count of Unreasonable Speed, a violation of 21 *Del. C.* § 4168; one count of Failure to have License in Possession, a violation of 21 *Del. C.* § 2721; and one count of Failure to Stop at a Red Light, a violation of 21 *Del. C.* § 4108. However, the Court notes that these charges are a culmination of the chain of events concerning Defendant that involved multiple officers over various areas in Dover. They do not all stem from Tfc. Solda's observations of his driving and the traffic stop.

[3] Defendant also filed a Motion to Enlarge Time on the same date that was unopposed. Under the circumstances of this case, the Court granted the motion.

[4] The Court notes that neither the State, nor Defendant, addressed Defendant's suppression motion based on Tfc. Solda's identification at the hearing.

3

"suggestive" and "unnecessary identification" of Defendant by Tfc. Solda.[5] Defendant asserts that Tfc. Solda was presented a single photograph and identified him as the driver of the Maxima from only that single photograph.[6] Defendant further contends that the suggestive and unnecessary identification created a substantial likelihood of misidentification that violated his due process rights.[7]

8. The State, in opposition, asserts that Defendant offered only a conclusory statement regarding the photograph being suggestive and that misidentification was likely.[8] The State further contends the photograph utilized by Tfc. Solda to make his identification of Defendant was viewed only after Defendant's fingerprints were collected from the Maxima, and that same procedure would have been used by Tfc. Solda at the scene of the traffic stop, if Defendant had not fled.[9] Furthermore, the State appears to argue that Tfc. Solda's face-to-face contact with Defendant and recalling a significant identifying feature, a tattoo, established the identification's

---

[5] D. Mot. to Suppress Evidence - Identification (hereinafter "D. Mot. - Identification") at 4.

[6] *Id.* at ¶ 3.

[7] *Id.* at ¶ 4.

[8] St. Reply to D. Mot. - Identification (hereinafter "St. Reply") at ¶ 8.

[9] *Id.* ¶ 9 (Tfc. Solda would have utilized a fingerprint scan to determine Defendant's correct name at the traffic stop. This would have resulted in viewing Defendant's photograph via the "LiveScan Mugshots" feature available through DELJIS. The same procedure was used after finger prints were found in the Maxima and identified as Defendant's.).

reliability.[10]

9. For the reasons that follow, the Court finds that Tfc. Solda's identification of Defendant was reliable and not impermissibly suggestive. Thus, his motion to suppress based on identification must be denied.

10. "An identification procedure will not pass constitutional muster where it is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable identification."[11]

11. The fact that an out-of-court identification procedure is unnecessarily suggestive, however, does not ipso facto constitute a due process violation.[12] An unnecessarily suggestive identification procedure must also create the danger of an irreparable misidentification.[13]

12. If the Court determines, "under the totality of the circumstances, that a pretrial identification procedure is impermissibly suggestive, but the identification is nevertheless reliable, evidence of the pretrial identification will not be excluded at trial."[14] In determining the admissibility of an out-of-court identification, the Court

---

[10] *Id.* at ¶ 11.

[11] *State v. Holmes*, 2012 WL 4086169, at *6 (Del. Super. Aug. 23, 2012) (citing *Younger v. State*, 496 A.2d 546, 550 (Del.1985) (quoting *Simmons v. U.S.*, 390 U.S. 377, 384 (1968)).

[12] *Id.* (citing *Perry v. New Hampshire*, 565 U.S. 228, 239 (2012); Monroe v. State, 28 A.3d 418, 431 (Del. 2011)).

[13] *Monroe*, 28 A.3d at 431.

[14] *Id. See also Neil v. Biggers*, 409 U.S. 188, 199 (1972).

5

must first determine whether the out-of-court identification procedure was impermissibly suggestive.[15] If the out-of-court identification is found to be impermissibly suggestive, the Court must then determine whether a likelihood of a misidentification exists such that the identification was unreliable.[16] This analysis is driven by the particular facts of the case.[17]

13. The Court finds that Tfc. Solda's utilization of a DELJIS photograph was not impermissibly suggestive. Here, Tfc. Solda told Defendant that he was going to attempt to verify Defendant's representations by finding Defendant's picture. Law enforcement officers in Delaware routinely utilize the LiveScan Mugshots feature on DELJIS to verify information from a suspect, especially in cases as here, where a suspect has no identification. That is exactly what Tfc. Solda would have done had Defendant not fled the traffic stop.

14. Additionally, the Court disagrees with Defendant's contention that Tfc. Solda utilized only the DELJIS photograph in his identification. Tfc. Solda also utilized surveillance footage and photographs obtained from a Wal-Mart that was identified on the receipt found in Defendant's vehicle. A subsequent evaluation of surveillance footage and pictures from that Wal-Mart, confirmed Defendant had visited that Wal-Mart prior to the traffic stop. This was secondary confirmation of

---

[15] *Id.* (citing *Younger*, 496 A.2d at 550).

[16] *Id.*

[17] *Holmes*, 2012 WL 4086169, at *7 (citing *Weber v. State*, 38 A.3d 271, 277 (Del. 2012)).

Defendant by Tfc. Solda and, as a result, the Court finds that identification, combined with the identification based on the DELJIS photograph, was not impermissibly suggestive.

15. Assuming arguendo, that Tfc. Solda's identification was impermissibly suggestive, the Court would nevertheless find the identification offered strong reliability to outweigh any corrupting effect of any impermissibly suggestive circumstances.

16. As the Supreme Court of the United States explained in *Neil v. Biggers*,[18] when determining an identification's reliability, courts must apply a totality of the circumstances analysis. The factors to be considered by a court include: (1) the opportunity of the witness to view the subject at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the subject; (4) the level of certainty of the witness' identification; and (5) the length of time between the crime and the identification.[19]

17. In this case, based on the evidence presented, the Court finds, under the totality of the circumstances, Tfc. Solda's identification was reliable. First, Tfc. Solda had an ample opportunity to view Defendant during the traffic stop. The record establishes that even though the stop took place in the early morning hours, Tfc. Solda was able to make a clear, face-to-face contact with Defendant by using his

---

[18] 409 U.S. 188 (1972).

[19] *Neil*, 409 U.S. at 199–200.

7

flashlight to determine that Defendant was the sole occupant of the Maxima.

18. As to the second *Neil* factor, Tfc. Solda had a high degree of attention. Defendant was observed by Tfc. Solda as the sole occupant of the Maxima, and as a result, he was able to focus directly on Defendant. This lead to Tfc. Solda's subsequent observation of Defendant's right arm tattoo. Additionally, Tfc. Solda's description of the traffic stop in his affidavit is corroborated by MVR footage. Keeping that in mind, the Court finds Tfc. Solda's description of Defendant and of the traffic stop is evidence of a high degree of attention.[20] Furthermore, Tfc. Solda's ability to recognize the Defendant a second time, albeit within three days, corroborates this finding further.[21]

19. Regarding the third *Neil* factor, Tfc. Solda was able to give as detailed a description of Defendant as he could, given the particular circumstances. Here, and subsequent to Defendant's flight, Tfc. Solda notified law enforcement and described Defendant as a young, light skinned Black male.[22] He later recalled and disclosed Defendant's right arm tattoo. As it turns out, Defendant is a light skinned Black male

---

[20] *Monroe*, 28 A.3d at 434 (finding that witness' vivid description of a shooting and the defendant evinced witness' high degree of attention).

[21] *Holmes*, 2012 WL 4086169, at *12 (citing *State v. Mullins*, 1999 WL 169350, at *4 (Del. Super. Mar. 18, 1999) ("The victim's high degree of attention to her attacker's appearance during the assault is evidenced by her ability to recognize him a second time when she spotted him at a local restaurant.")).

[22] Tfc. Solda also informed law enforcement that the Defendant was wearing black pants, a white shirt, and a blue hat at the time he fled the traffic stop.

and has a tattoo on his right arm. As such, the Court finds that Tfc. Solda's ability to accurately describe Defendant weighs in favor of finding reliability.

20. The record also establishes that Tfc. Solda was certain in his identification of Defendant. There is nothing in the record to suggest that Tfc. Solda hesitated or questioned his memory when he viewed either Defendant's DELJIS photograph or the Wal-Mart surveillance footage and photos. Tfc. Solda's objective and genuine confirmations constitute additional persuasive evidence of a reliable identification.

21. The last of the *Neil* factors is time between the alleged criminality and identification. Here, a period of one to three days passed between the traffic stop and Tfc. Solda's identification. Tfc. Solda signed his affidavit on August 27, 2018, as when he made references to identifying the Defendant utilizing the photos and surveillance footage. In *Clayton v. State*,[23] the Delaware Supreme Court found that a three-month lapse of time between the commission of the crime and the photographic lineup did not render the identification unreliable.[24] In this case, three days was a fraction of the time frame considered in *Clayton*, and adds further weight to the reliability of the identification. As a result, the Court does not find this time period of between one to three days to be negatively significant.

22. After considering the *Neil* factors, the Court concludes, under the totality of the circumstances, that Tfc. Solda's identification of Defendant was reliable.

---

[23] 2006 WL 141027, 2006 WL 141027 (Del. 2006) (Table).

[24] *Clayton*, 2006 WL 141027, at *2.

9

Accordingly, since the Court has also found the identification procedure used was not impermissibly suggestive, Defendant's motion must be denied as he has not met his burden in demonstrating that there was a "very substantial likelihood of irreparable misidentification."[25]

23.   Thus, Tfc. Solda's out-of-court identification is admissible at trial. Defendant's Motion to Suppress on the grounds of identification is hereby **DENIED**.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

oc:   Prothonotary
cc:   Lindsay A. Taylor, Esquire
      Edward C. Gill, Esquire

---

[25] *Neil*, 409 U.S. at 198 (citing *Simmons*, 390 U.S. 384).